IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| TENNESSEE CLEAN WATER NETWORK, | ) ) ) |
| Plaintiff, | ) ) ) |
| | ) Civil No. _____ ) ) |
| v. | ) ) |
| TENNESSEE VALLEY RECYCLING, LLC, | ) ) ) |
| Defendant. | ) |

## COMPLAINT

The Tennessee Clean Water Network, by and through counsel, hereby alleges as follows:

### INTRODUCTION

1) This case concerns serious and chronic violations of the federal Clean Water Act at a scrap metal processing facility owned by Tennessee Valley Recycling, LLC ("TVR") in Pulaski, Tennessee. TVR discharges industrial stormwater through Outfall 001 to Richland Creek at mile 24.1, just downstream from the City of Pulaski's drinking water intake. Because the raw materials TVR processes are exposed to rain and snow, runoff from the site contains pollutants present in the products being recycled. Of particular concern, these pollutants include polychlorinated biphenyls (PCBs), which are highly toxic to people and to fish and aquatic life. The discharge also contains zinc and total suspended solids ("TSS"), which are comprised of a variety of materials in particulate form, including PCBs.

2) Pursuant to its delegated authority under the federal Clean Water Act, the Tennessee Department of Environment and Conservation ("TDEC") issued National Pollutant Discharge Elimination System ("NPDES") Permit No. TN0070063 (the "Permit") to authorize and limit this discharge. The Permit requires TVR to operate and maintain a set of best management practices, including a sediment pond, to reduce the presence of pollutants in the discharge. The Permit also imposes numeric limits on the amount of PCBs, TSS, and zinc that are allowed, and requires TVR to monitor and report these discharges on its discharge monitoring reports ("DMRs"). TVR has reported numerous, ongoing, and serious violations of its NPDES permit, including exceedances of Permit limits for PCBs, TSS, and zinc on its DMRs.

3) Plaintiff Tennessee Clean Water Network ("TCWN") is a nonprofit environmental organization with individual members who live and work in the Pulaski area who are injured by TVR's chronic and ongoing permit violations.

4) Section 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(a)(1), authorizes citizens to bring suit in federal court to enforce the Act. The Act's "citizen suit provision" authorizes citizens to obtain an injunction and civil penalties (to be paid to the federal government) against violators, in addition to fees and costs of litigation. TVR is currently in violation of the Act, and, absent an appropriate order from this Court, TVR will continue to violate the Act.

## JURISDICTION AND VENUE

5) This Court has subject matter jurisdiction pursuant to Section 309(b) of the Act, 33 U.S.C. § 1319(b), and 28 U.S.C. § 1331.

6) Plaintiff has complied with the pre-suit notice requirements of Section 505(b)(1)(A) of the Act, 33 U.S.C. § 1365(b)(1)(A). On August 20, 2012, Plaintiff mailed a 60-

Day Notice of Intent to Sue Pursuant to Section 505(b)(1)(A) of the Clean Water Act ("Notice") to TVR, the Administrator of the U.S. Environmental Protection Agency ("EPA"), the Regional Administrator of the EPA, and the Commissioner of TDEC. The Notice is attached hereto as Exhibit 1 and is incorporated by reference herein. More than sixty days have passed since the Notice was served on TVR and these agencies.

7) Neither EPA nor TDEC has commenced and diligently prosecuted a civil or criminal action in a court of the United States or a State to redress the violations of the Act by TVR.

8) Neither EPA nor TDEC had commenced and diligently prosecuted an administrative penalty action pursuant to Section 309(g) of the Act, 33 U.S.C. § 1319(g), or a comparable Tennessee law, to redress violations by TVR prior to the service of Plaintiff's Notice. This suit is being commenced within 120 days after the service of Plaintiff's Notice.

9) Plaintiff will, upon receipt of a file-stamped copy of this Complaint, mail a copy of this Complaint to the Administrator of the EPA, the Regional Administrator of EPA Region 4, and to the Attorney General of the United States, as required by the Act.

10) Venue is appropriate in the Middle District of Tennessee, pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this District.

## PARTIES

11) Plaintiff Tennessee Clean Water Network is a Tennessee nonprofit corporation with its principal office in Knoxville, Tennessee. TCWN was organized to advocate for strong polices and programs that result in more effective protection and restoration of Tennessee waters; to educate organizations, decision-makers, and the public about important water resource

issues; and to ensure the protection and restoration of Tennessee's waters. TCWN empowers Tennesseans to exercise their right to clean water and healthy communities by fostering civic engagement, building partnerships and advancing and, when necessary, enforcing water policy for a sustainable future.

12) TCWN is a membership organization. TCWN has members who live, work, and/or recreate in and near Pulaski, Tennessee downstream from TVR's discharges and whose recreational, aesthetic, health, and/or property interests are injured by the violations of the Act described herein. These injuries are fairly traceable to the violations of the Act alleged herein, and could be redressed by a favorable resolution of this case.

13) TCWN is a "citizen" within the meaning of 33 U.S.C. § 1365(a) and (g).

14) Defendant TVR Tennessee Valley Recycling, LLC is a Delaware limited liability corporation with its principal office in Wilmington, Delaware. TVR's website indicates its home office is located in Decatur, Alabama. TVR's Tennessee registered agent is Robert C. Henry in Pulaski.

15) TVR is a "person" within the meaning of Section 502(5) of the Act, 33 U.S.C. § 1362(5).

**STATUTORY BACKGROUND**

16) Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants from a point source to waters of the United States except in compliance with various enumerated sections of the Act. Among other things, Section 301(a) prohibits the discharge of any pollutant into navigable waters of the United States from a point source unless the discharge is both (a) covered by a NPDES permit applicable to that point source, and (b) in compliance with the discharge limitations and other conditions set by such permit.

17) In Tennessee, EPA has delegated the authority to implement the NPDES permitting program to TDEC, subject to EPA oversight, pursuant to Section 402(b) of the Act, 33 U.S.C. § 1342(b).

18) NPDES permits must include the more stringent of technology-based or water quality-based effluent limits. 33 U.S.C. §§ 1311(b)(2)(A) & 1312(a). The Clean Water Act requires permitting agencies to set technology-based effluent limits that reflect the ability of available technologies to reduce, and if possible, eliminate pollution discharges. 33 U.S.C. §§ 1311 & 1342(a)(1). Water quality-based effluent limits are established in NPDES permits when analysis shows that a discharge from a point source has the reasonable potential to cause or contribute to violations of instream water quality standards. 40 C.F.R. § 122.44(d).

19) A violation of an NPDES permit issued by TDEC is a violation of the Act. Pursuant to Section 505(a)(1) of the Act, 33 U.S.C. § 1365(a)(1), a citizen who has been adversely affected by such a violation may bring suit to enforce the permit. The Court may grant declaratory relief, issue an injunction, and impose a penalty for each day of each separate violation ($32,500 per day for each violation of the Act, $37,500 as of January 12, 2009, none of which can be paid to Plaintiff).

## GENERAL ALLEGATIONS

20) PCBs, TSS, and zinc are pollutants within the meaning of the Act, 33 U.S.C. § 1362(6).

21) TVR's Outfall 001 is a point source under the Act, 33 U.S.C. § 1362(14).

22) Richland Creek is a water of the United States within the meaning of the Act, 33 U.S.C. § 1362(7), and is also a water of the State of Tennessee. TDEC has classified Richland Creek for the following uses: fish and aquatic life, recreation, irrigation, domestic water supply,

industrial water supply, and livestock watering & wildlife. Tenn. Comp. R. & Regs. 1200-04-04.06; Permit at R-8. TDEC has designated Richland Creek as partially/not supporting the aquatic life and recreational uses due to excess sedimentation and E. coli.

## NPDES PERMIT TN0080063

23) TVR's scrap metal yard is located at 821 West College Street, Pulaski, Giles County, Tennessee 38478. TVR discharges pollutants, including PCBs, TSS, and zinc, to Richmond Creek via Outfall 001 (located approximately at Long. -87.040278, Lat. 35.194167) to Richmond Creek. TDEC issued NPDES permit TN0080063 to authorize and limit these discharges, effective on February 1, 2008.

24) Part II.C.1. of the Permit provides, "All discharges shall be consistent with the terms and conditions of this permit. Any permit noncompliance constitutes a violation of applicable State and Federal laws and is grounds for enforcement action, permit termination, permit modification, or denial of permit reissuance."

25) Part I.A. of the NPDES permit establishes a daily maximum limit of .000048 pounds per day of PCBs. This limit was imposed to prevent violation of state water quality standards for consumption of fish caught in Richland Creek. *See* Permit at R-6. The Permit provides that "any excursion of the PCB limit will be considered a permit violation." Permit at 2.

26) Part I.A. of the Permit establishes a water quality-based daily maximum TSS limit of 40 mg/L. This limit was imposed because TDEC has determined that aquatic habitat in Richland Creek is impaired as a result of excess sedimentation. TDEC has established a Total Maximum Daily Load (TMDL) for Siltation and Habitat Alteration in the Lower Elk River Watershed (HUC 06030004) that assigns TVR a wasteload allocation of 40 mg/L of TSS. As

TDEC has noted, "no additional wastewater loads are allowed to the receiving waters." Permit at R-7.

27) Part I.A. of the NPDES permit establishes a daily maximum zinc limit of 2.2 mg/L. This limit was imposed in the previous permit due to the 1998 listing of Richland Creek as impaired for zinc. Although the creek is no longer listed for this impairment, TDEC retained the concentration limit in the Permit.

28) Part II.A.4.a. of the Permit provides, "The permittee shall at all times properly operate and maintain all facilities and systems (and related appurtenances) for collection and treatment which are installed or used by the permittee to achieve compliance with the terms and conditions of this permit." This requirement for proper operations and management is particularly important for stormwater discharges like TVR's, because discharge quality is directly related to rigorous implementation of best management practices, particularly pond maintenance.

29) Part I.D.1. of the Permit requires monitoring results to be recorded monthly using discharge monitoring report ("DMR") forms prepared by TDEC and that these forms be signed in accordance with the requirements of 40 C.F.R. § 122.22. These forms require the responsible official signing the DMR certify that the DMR and its attachments are true, accurate, and complete to the best of that person's knowledge based on that person's supervision of the process and "in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted." *See also* 40 C.F.R. § 122.22 (source of this certification language).

30) Because the Permit is technically set to expire on December 27, 2012, TDEC is currently in the process of renewing TVR's permit. TDEC originally placed a draft permit on

public notice that proposed to eliminate numeric limits on PCBs, TSS, and zinc. Due to comments submitted by TCWN, TDEC has determined instead to retain numeric limits for PCBs and TSS, and will place a new draft permit on public notice. Because TVR submitted a timely application for renewal, the Permit has been administratively extended. The Permit remains in effect until a new permit is issued, and any appeals have been finally determined by Tennessee's Board of Water Quality, Oil and Gas. Tenn. Code Ann. § 4-5-322(b).

## COMPLIANCE HISTORY

31) The Pulaski scrap yard has a long history of noncompliance. TDEC first issued a NPDES permit to TVR's predecessor, Denbo Scrap Metals, in 1992. It took the facility a decade to install even the most basic stormwater treatment, a sediment pond.

32) In the Rationale for the current Permit, TDEC notes the facility "had appreciable difficulty in meeting effluent limitations" in its prior permit, and had committed "multiple permit infractions too numerous to list here." Permit at R-3. These violations included exceeding permit limits for TSS and zinc, failing to properly monitor and report discharges, causing pollution, and failing to develop and implement an effective stormwater pollution prevention plan. As a result, TDEC required the facility to relocate its discharge just downstream from the City of Pulaski's drinking water intake. TDEC and TVR entered a Consent Order, undated in the file, but apparently in early 2008, that imposed no compliance obligations other than "operat[ing] the business within the requirements of the law."

33) Unfortunately, these administrative actions did not bring TVR into compliance. From July 2008 through April 2012, TVR documented 26 violations of its PCB limit, 22 violations of its TSS limit, and 13 violations of its zinc limit. The PCB exceedances are

particularly severe, ranging from about four times the limit up to 166 times the limit. TVR failed to properly report many of these violations to TDEC.

34) TDEC issued a notice of violation to TVR on August 15, 2012, several days after TCWN conducted a file review at TDEC. On November 5, 2012, TDEC issued a Commissioner's Order and Assessment. This Order imposed a noncontingent penalty of $16,250, and required TVR to develop a monitoring and compliance plan. This Order did not penalize PCB violations, but instead addressed only TSS and zinc. Because TDEC issued this Order under the Tennessee Water Quality Control Act, which is not comparable to the Clean Water Act, this Order does not preclude the instant citizen suit. *Jones v. City of Lakeland, Tennessee*, 224 F.3d 518 (6th Cir. 2000). Moreover, TVR has appealed this order, so it is not currently in effect.

## CLAIMS

### COUNT ONE: DISCHARGE OF EFFLUENT FROM OUTFALL 001 CONTAINING PCBs IN EXCESS OF THE DAILY MAXIMUM NPDES PERMIT LIMIT

35) Paragraphs 1-34 of this Complaint are hereby realleged and incorporated by reference herein.

36) On numerous occasions, TVR has discharged effluent from its Pulaski scrap yard via Outfall 001 to Richmond Creek that contains PCBs in excess of the daily maximum limit of .000048 pounds per day imposed by Section I.A. of the NPDES Permit, including each and every date listed on Attachment A of the Notice (Exhibit 1), which is attached hereto and incorporated by reference herein.

37) TVR's discharges of PCBs in excess of its Permit limit are ongoing. TCWN is unaware of any action by TVR that has eliminated future discharges from Outfalls 001 that exceed the daily maximum limit on PCBs.

38) Each day on which TVR discharges PCBs in excess of the applicable daily maximum effluent limit from Outfall 001 constitutes a separate violation of the NPDES Permit and of the Act.

**COUNT TWO: DISCHARGE OF EFFLUENT FROM OUTFALL 001 CONTAINING TOTAL SUSPENDED SOLIDS IN EXCESS OF THE NPDES PERMIT LIMIT**

39) Paragraphs 1-38 of this Complaint are hereby realleged and incorporated by reference herein.

40) On numerous occasions, TVR has discharged effluent from its Pulaski scrap yard via Outfall 001 to Richmond Creek that contains TSS in excess of the daily maximum limit of 40 mg/L imposed by Section I.A. of the NPDES Permit, including each and every date listed on pages 4-5 of the Notice (Exhibit 1), which is attached hereto and incorporated by reference herein.

41) TVR's discharges of TSS in excess of Permit limits are ongoing. TCWN is unaware of any action by TVR that has eliminated future discharges from Outfalls 001 that exceed the daily maximum limit on TSS.

42) Each day on which TVR discharges TSS in excess of the applicable daily maximum effluent limit at Outfall 001 constitutes a separate violation of the NPDES Permit and of the Act.

**COUNT THREE: DISCHARGE OF EFFLUENT FROM OUTFALL 001 CONTAINING ZINC IN EXCESS OF THE NPDES PERMIT LIMIT**

43) Paragraphs 1-42 of this Complaint are hereby realleged and incorporated by reference herein.

44) On numerous occasions, TVR has discharged effluent from its Pulaski scrap yard via Outfall 001 to Richmond Creek that contains zinc in excess of the daily maximum limit of

2.2 mg/L imposed by Section I.A. of the NPDES Permit, including each and every date listed on pages 5-6 of the Notice (Exhibit 1), which is attached hereto and incorporated by reference herein.

45) TVR's discharges of zinc in excess of the Permit limit are ongoing. TCWN is unaware of any action by TVR that has eliminated future discharges from Outfalls 001 that exceed the daily maximum limit on zinc.

46) Each day on which TVR discharges zinc in excess of the applicable daily maximum effluent limit at Outfall 001 constitutes a separate violation of the NPDES Permit and of the Act.

### COUNT FOUR: FAILURE TO PROPERLY OPERATE AND MAINTAIN TREATMENT SYSTEMS, SAMPLE & TEST EQUIPMENT IN VIOLATION OF THE NPDES PERMIT

47) Paragraphs 1-46 of this Complaint are hereby realleged and incorporated by reference herein.

48) On numerous occasions, TVR has failed to properly operate and maintain treatment systems, sample & test equipment in violation of Part II.A.4.a. of the Permit, including the following:

    (a) TVR has discharged effluent from its Pulaski scrap yard via Outfall 001 to Richmond Creek that contains PCBs, TSS, and/or zinc exceeding Permit limits by more than 100%, including each and every date listed on pages 4-6 and Exhibit A of the Notice (Exhibit 1), which is attached hereto and incorporated by reference herein.

    (b) On April 14, 2011, a TVR consultant inspected the pump station and identified a buildup of sediment in the wet well and a buildup in the plastic tubing feeding the sampler. The sampler tube was replaced in April, but the wet well was not

cleaned until sometime after May 26, 2011. There were five PCB exceedances and one zinc exceedance during this delayed maintenance, and TVR's June 2011 cover letter appears to attribute its earlier PCB violations to the buildup in the wet well. Thus, the delay in cleaning the wet well is a violation of the Permit's proper O&M requirement every day between April 15, 2011 (or the date on which the wet well should have been cleaned) and the date when it was cleaned after May 26, 2011.

      (c)    TVR noted it was revising its best management practices, and had a consultant out on February 17, 2011 to address zinc exceedances. TVR routinely reported zinc exceedances from January 2011 through May 2011.

    49)    TVR's failure to properly operate and maintain treatment systems, sample & test equipment in violation of Part II.A.4.a. of Permit is ongoing. TCWN is unaware of any action by TVR that has corrected this failure.

    50)    Each day on which: TVR discharges PCBs, TSS, and/or zinc that exceed the Permit limit by more than 100%; TVR delayed cleaning the wet well; and each day from February 17, 2011 until TVR revised its best management practices to address zinc exceedances constitutes a separate violation of the NPDES Permit and of the Act.

### COUNT FIVE: FAILURE TO TRULY AND CORRECTLY REPORT DISCHARGES OF PCBs IN VIOLATION OF THE NPDES PERMIT

    51)    Paragraphs 1-50 of this Complaint are hereby realleged and incorporated by reference herein.

    52)    On numerous occasions, TVR has made systematic reporting errors regarding its PCB discharges in violation of Part I.D.1 of the NPDES Permit, including each and every date listed on pages 8-9 of the Notice (Exhibit 1), which is attached hereto and incorporated by reference herein. The DMR reporting was not true and accurate on these occasions as a result of

TVR's failure to develop a reporting system that ensured proper gathering and evaluation of the information submitted.

53) TVR's misreporting of PCB discharges in violation of Part I.D.1. of the Permit is ongoing. TCWN is unaware of any action by TVR that has developed and implemented a reporting system to correct these errors.

54) Each day on which TVR misreports its PCB discharges in violation of Part I.D.1. of the Permit constitutes a separate violation of the NPDES Permit and of the Act.

## **RELIEF REQUESTED**

WHEREFORE, TCWN respectfully requests that the Court grant the following relief:

a. Declare that TVR has violated and continues to violate the Clean Water Act;

b. Issue an injunction requiring TVR to comply fully with its NDPES Permit;

c. Order TVR to pay civil penalties for each violation of the Act occurring on or after August 20, 2007, in an appropriate amount as provided by 33 U.S.C. §§ 1319(d) and 1365(a), as modified by the Civil Monetary Penalty Adjustment Rule;

d. Order TVR to take such steps as are necessary and proper to remedy the harm caused by its violations of the Act;

e. Award TCWN its costs (including reasonable attorney and expert witness fees and other litigation expenses) as authorized by Section 505(d) of the Act, 33 U.S.C. § 1365(d); and

f. Award such other relief as the Court deems just and appropriate.

Respectfully submitted on this, the 17th day of December, 2012.

*Stephanie D. Matheny*
Stephanie D. Matheny
(BPR #027783)
Tennessee Clean Water Network
P.O. Box 1521
Knoxville, TN 37901
Telephone: (865)522-7007 x 102
stephanie@tcwn.org